# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JUSTIN KAUFMAN, as the Wrongful Death
Personal Representative of the Estate of
BEVERLY MODLIN, Deceased,
ROBERT MODLIN, and
SUSAN HINES,

     Plaintiffs,

v.                                    Case No. 19-CV-00728

UNITED STATES OF AMERICA,

     Defendant.

## COMPLAINT FOR WRONGFUL DEATH AND NEGLIGENCE

COME NOW Plaintiffs Justin Kaufman, as the Wrongful Death Personal Representative of

the Estate of Beverly Modlin, Deceased, Robert Modlin, and Susan Hines, by and through their

counsel, VIGIL LAW FIRM, P.A. (Jacob G. Vigil, Esq.), and for their causes of action against

Defendant United States of America hereby state:

## NATURE OF THE CASE

1.     This case arises from the death of 81-year old widow Beverly Modlin, who was

visiting Bandelier National Monument in Los Alamos, New Mexico with her two children on

October 3, 2016, when she was killed by a ponderosa pine tree, measuring seventy (70) feet tall and

six (6) feet in circumference, that fell directly on her in the Amphitheater parking lot.  The

ponderosa pine that killed Beverly also injured her son, Plaintiff Robert Modlin.  Beverly's

daughter, Plaintiff Susan Hines, was in the back seat of the family's rental car when the tree

collapsed killing her mother, injuring her brother, and smashing onto the car in which she was

seated.

2.      Bandelier is directly responsible for Beverly's wrongful death and Plaintiffs' injuries.  Park rangers, including Bandelier's Superintendent, were aware that the tree had been struck by lightning just one week before it fell in the parking lot and had a visible wound that made it highly likely it would crack at its stem and fall. Park rangers also knew that the tree was located in a Designated Hazardous Tree Management Zone and posed a direct hazard to park visitors like Plaintiffs.  Nevertheless, Bandelier employees took no steps to abate the danger and remove and/or remediate the tree in direct violation of Bandelier's Hazardous Tree Management Plan and other policies and procedures promulgated by the United States National Park Service.

## PARTIES

3.      At all times relevant to the allegations herein, Plaintiff Justin Kaufman is an attorney at law and a resident of Santa Fe, County of Santa Fe, New Mexico, and is the Wrongful Death Personal Representative for the Estate of Beverly Modlin pursuant to provisions of the New Mexico Wrongful Death Act, NMSA 1978, §§ 41-2-1 *et seq*.

4.      At all times relevant to the allegations herein, Plaintiff Robert Modlin is and was a resident of Wheeling, Cook County, Illinois, and is the son of the decedent, Beverly Modlin.

5.      At all times relevant to the allegations herein, Plaintiff Susan Hines is and was a resident of Knoxville, Tennessee, and is the daughter of the decedent, Beverly Modlin.

6.      At all times relevant to the allegations herein, Defendant United States of America, through its Department of the Interior ("Interior"), had direct oversight of the National Park Service ("NPS") and its monuments, including Bandelier National Monument in Los Alamos, New Mexico ("Bandelier") and Wildland Fire Fighting Division, managed by Bandelier, where the incident alleged in this Complaint occurred.  Defendant bears liability under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), for any and all negligent acts and omissions alleged

herein by federal employees acting in the scope of their employment at Bandelier, including Interior, NPS, and/or Bandelier employees.

## JURISDICTION AND VENUE

7.      This action arises out of the FTCA, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), and the acts and omissions set forth in this Complaint occurred in District of New Mexico.

8.      Plaintiff Estate of Beverly Modlin, Plaintiff Robert Modlin, and Plaintiff Susan Hines have exhausted the administrative requirements set forth in 28 U.S.C. § 2675(a) by each submitting a Standard Form 95, Claim for Damages, Injury or Death based on the facts alleged within this Complaint and the applicable limitations period, to the United States Department of the Interior, Office of the Regional Solicitor Southwest Region through the tort claims email address (doitorts@sol.doi.gov). The claims were received on September 5, 2018 and forwarded by Bandelier National Monument to the Regional Solicitor's Office, Denver, Colorado, for adjudication. Because more than six (6) months have passed since the claims were submitted (September 5, 2018) without receiving a formal denial from the United States Department of the Interior, Office of the Regional Solicitor Southwest Region, the claims are deemed denied.

9.      Defendant United States of America is the real party in interest under the provisions of the FTCA.

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b)(1).

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1402(b) because the acts and omissions alleged herein occurred in the District of New Mexico, County of Los Alamos, New Mexico.

## GENERAL ALLEGATIONS

12.     On October 3, 2016, Plaintiffs Robert Modlin and Susan Hines, along with their mother, decedent Beverly Modlin, were visiting Bandelier. They parked their rental car by the shuttle stop in the Amphitheater parking lot.

13.     At approximately 2:30 p.m., Susan, Robert, and Beverly returned to their vehicle. Susan entered the back seat, and Beverly and Robert stood outside of the vehicle.

14.     A ponderosa pine tree located in the vicinity of the Amphitheater parking lot then fell directly on Beverly, Robert, and the rental car containing Susan.  Emergency services were called, and nearby visitors assisted in clearing branches to gain access to Beverly.

15.     Beverly was not responsive, so Robert attempted resuscitation on Beverly until paramedics arrived.

16.     The paramedics attempted to revive Beverly for approximately twenty (20) minutes but were unsuccessful.

17.     As a result of being struck by the falling tree, Beverly sustained fatal injuries and died at the scene.

18.     In addition, as a result of being struck by the falling tree, Robert sustained injuries including, but not limited to, a closed head injury, liver laceration, spinal fracture, lung injuries, and abdominal injuries.

19.     Robert was transported to Los Alamos Medical Center for treatment.

20.     On the same day, Bandelier's Wildland Fire personnel removed the fallen tree from the parking lot, and cut and chipped it, destroying it forever.

21.     A post-incident investigation was conducted, and a report entitled "Modlin Death Investigation—Report—Case Incident NP16178999" was written based on the investigation by Ranger Derek Thompson and Ranger Iftikhar Khan.

22.     The report was approved by Chief Ranger Dennis Milligan.

23.     The tree that fell on Robert, Beverly, and the rental vehicle containing Susan was identified as a large ponderosa pine, reported to have measured approximately seventy (70) feet tall and twenty-three (23) inches in diameter (six feet in circumference). *See* Exhibit 1, Modlin Death Investigation—Report—Case Incident NP16178999, p. 1.

24.     Previously, on September 16, 2016, the tree that killed Beverly and injured Robert was struck by lightning during a storm. *Id.*, p. 10.

25.     On September 22, 2016, Bandelier Interpretative Ranger Geoff Goins discovered that the ponderosa pine had been struck by lightning.  Ranger Goins sent a photo of the tree and a report to his supervisor, Joanie Budzileni, stating that the ponderosa pine was struck by lightning and that he believed it caused the power outage Bandelier experienced on September 16, 2016. *Id.*

26.     The September 16, 2016 lighting strike was the second time the ponderosa pine tree had been struck by lightning in a span of five-years. *See* Exhibit 2, Appendix F, Evaluation of Bandelier National Monument Tree Failure Incident—USDA Plant Pathologist James Jacobs report, p. 1.

27.     After September 22, 2016, at least an additional six Bandelier employees observed the lightning-struck tree in person and/or had knowledge of it having been struck by lightning. *See* Exhibit 1, pp.10-14.

28.     On September 24, 2016, Bandelier Superintendent Jason Lott also observed the lightning-struck tree. *Id.*, p. 10.

29.     Bandelier has a Hazardous Tree Management Plan, which was enacted in August 2009 by Superintendent Lott to mitigate the danger of hazardous trees. *Id*., p. 9.

30.     A hazardous tree is a plant with a significant flaw which, when coupled with a location in an identified public use area, makes that tree an actual risk. *See* Exhibit 3, The US Park Service Hazard Tree Guidelines, Definitions.

31.     Identification of a hazardous tree is contingent upon the presence of an outwardly visible defect. *See* Exhibit 4, excerpts from Bandelier National Monument Hazardous Tree Management Plan 2.1.

32.     Bandelier's Hazardous Tree Management Plan includes a rating system for inspecting potentially hazardous trees and estimating the probability of failure and the striking of targets during the time between examinations. *Id.*, p. 15.

33.     Evaluation of the potential hazardous trees includes assessing (a) the possibility of a "target" being hit due to its location, and its significance; and (b) severity of defect, the apparent likelihood of failure, and damage potential, due to size, length, or weight of the falling hazard. *Id.*, p. 15.

34.     On October 4, 2016, Chief Ranger Milligan requested an evaluation of the lightning-struck tree by USDA Forest Service Pathologist James J. Jacobs. Exhibit 1, p. 12.

35.     In his report, Mr. Jacobs noted that, based on the image of the tree provided to him shortly before it fell, the tree bore a significant wound that was likely related to a recent lightning strike. *See* Exhibit 2, p. 4.

36.     Mr. Jacob's report states, "The wound created by the second and most recent lightning strike could have caused significant cracking of the stem." *Id.*

37.     Mr. Jacob's report further states, "If a significant crack was associated with this new lightning-caused wound this would have received a hazard tree rating of 6. This rating is the highest risk rating given to potential hazard trees within Region 3." *See* Exhibit 2, p. 4.

38.     The lightning-struck ponderosa pine met the qualifications of being a hazardous tree.

39.     The lightning-struck ponderosa pine was located in a designated developed zone of Bandelier National Monument, between the Amphitheater parking lot and a trail.

40.     The lightning-struck ponderosa pine was located in one of the Designated Hazardous Tree Management Zones of Bandelier National Monument. *See* Exhibit 4, p. 21.

41.     Ranger Geoff Goins, who discovered the tree on September 22, 2016, reported that he found "basically logs" on the handicap trail and stated that "[a] tree had been blown apart by lightning." *See* Exhibit 1, pp. 10-11.

42.     Bandelier maintenance employee Douglas Seekins reported the lightning-struck tree to his boss, Chief of Maintenance Joseph Gurule. *Id.*, p. 10.

43.     According to Mr. Seekins, he [Gurule] told him, "I believe I had seen the tree that got struck by lightning. I thought it was, I noticed a big crack in it," and that "we're going to have to deal with it eventually, like it, you know it's probably going to die and become a hazard to the parking lot and the trail." *Id.*, p. 11.

44.     In describing the crack in the tree, Mr. Seekins said it "was a large length of the tree." *Id.*

45.     There was a high likelihood that, due to the tree's location, it would be struck by lightning.

46.     There was also a high likelihood that the ponderosa pine would fall due to the severity of defect, apparent likelihood of failure, and damage potential because of its size, length, and weight.

47.     Based on Bandelier's Hazardous Tree Management Plan's rating system, the lightning-struck tree met the criteria for hazardous removal.

48.     Defendant, through its employees, should have assessed and removed the lightning-struck ponderosa pine in accordance with Bandelier's Hazardous Tree Management Plan's rating system as soon as it was discovered.

49.     On the day of the incident, no Bandelier employee had any hazardous tree training. *See* Exhibit 5, Response to Serrano FOIA Request #2, p. 1.

50.     On the day of the incident, Bandelier did not have a hazard tree trainer or a training curriculum for identifying hazardous trees.  *Id.*

51.     It was the practice of Bandelier employees to notify Wildland Fire or law enforcement to have wildland fire sawyers assess hazardous trees for removal. *Id.*

52.     Wildland Fire is a division under the management of Bandelier National Monument as a National Park Service entity. *Id.*

53.     Chief of Maintenance Gurule and maintenance employee Seekins discussed mentioning the lightning-struck tree at a squad meeting during safety topic and informing Bandelier Fire to address an assessment of the tree. *See* Exhibit 1, p. 10.

54.     Upon information and belief, Bandelier never notified the Wildland Fire Department to assess the lightning-struck tree for removal.

55.     In violation of its own policies and procedures, Defendant was negligent by failing to assess, recognize, document, and address the hazardous condition of the lightning-struck tree near

the Amphitheater parking lot maintained by Bandelier; failing to warn potential visitors of the site that the lightning-struck tree presented serious risk of harm or death; failing to provide precautionary measures for hazardous and unsafe conditions; and failing to comply with the self-imposed specific and mandatory course of action set forth in Bandelier's Hazardous Tree Management Plan provisions including, but not limited to, those found in Exhibit 4, pages 4-8, 11-17, 20-21, 23-24, and 26-29.

## COUNT ONE

### Wrongful Death

56.     Plaintiffs incorporate by reference all the allegations contained above as though fully set forth at length herein.

57.     A reasonably prudent person would foresee that failing to assess and remove the lightning struck ponderosa pine from a high traffic area would involve an unreasonable risk of injury to the public.

58.     Defendant had a duty of a reasonably prudent person to assess and remove the lightning struck ponderosa pine to prevent injury to the public and Plaintiffs.

59.     Defendant failed to exercise its duty of ordinary care.

60.     Defendant by and through its agents, employees, and/or representatives breached its duty to Plaintiffs in the following manners:

a.     By failing to use ordinary care to keep the premises safe for use by visitors;

b.     By failing to identify and prevent injuries from recognizable threats to safety and the health of persons visiting Bandelier National Monument;

c.     By failing to administer and adequately fulfill the Bandelier National Monument Hazardous Tree Management Plan;

d.      By failing to comply with the Bandelier National Monument Hazardous Tree Management Plan and the United States Department of the Interior National Park Service policies;

e.      By failing to designate at least one staff person with the responsibility to perform or delegate the necessary hazardous tree inspections;

f.      By failing to properly train staff in hazard tree management;

g.      By failing to provide adequate guidance, assistance, training, and supervision relating to the identification and remediation of hazardous trees;

h.      By failing to retain or assign qualified personnel to provide adequate regional guidance, technical assistance, training, supervision, and qualified personnel to carry out duties of inspecting, identifying and remediating known or obvious tree hazards at or near park-designated developed zones and/or Designated Hazardous Tree Management Zones;

i.      By failing to conduct appropriate inspections and to document such inspections of the subject Amphitheater parking lot identified hereinabove to identify hazardous trees;

j.      By failing to abate the risk of exposure to hazardous tree conditions or directly mitigate through physical removal or pruning of the defect;

k.      By failing to take reasonable action to remove or remediate the known or obvious risk of serious injury, death or property damage to persons using the Amphitheater parking lot and nearby trail;

l.      By failing to warn potential users of the site of the serious risk of harm, death and/or property damage caused by the lightning struck tree;

m.      By failing to provide precautionary measures for the hazardous and unsafe conditions;

n. By failing to promptly close the area to public entry where a tree having the highest hazard rating was involved; and

o. By failing to provide reasonable public notice that a known highly hazardous tree problem would not be alleviated in a timely fashion.

61. The decisions and actions alleged hereinabove were matters of mandatory compliance and did not involve a conscious choice, susceptible to policy judgment or involve an exercise of political, social or economic judgment.

62. As a direct and proximate result of Defendant's negligence, the Estate of Beverly Modlin suffered damages including but not limited to pain and suffering, wrongful death, the value of her life, and the mitigating or aggravating circumstances attending the wrongful act or neglect.

63. As further direct and proximate result of Defendant's negligence, the Estate of Beverly Modlin has suffered damages including the reasonable expenses of the necessary funeral and burial.

64. As further direct and proximate result of Defendant's negligence, Plaintiff Robert Modlin suffered emotional distress.

65. As further direct and proximate result of Defendant's negligence, Plaintiff Susan Hines suffered emotional distress.

**<u>COUNT TWO</u>**

**Negligence**

66. Plaintiffs incorporate by reference all the allegations contained above as though fully set forth at length herein.

67. Defendant committed multiple violations of self-imposed, specific, and mandatory obligations.

68.     The National Park Service has policies and directives for managing the National Park System.

69.     On the National Park Service website, the National Park Service provides information regarding "Things to Know" about the National Park Service policy and the Directives System. *See, e.g.,* Exhibit 6.

70.     Included in the list of "Things to Know" is a section regarding what is mandatory and what is merely advice within the National Park Service's policies and directives.

71.     "A clear understanding of what is or is not mandatory can be obtained from key words contained in the various guidance documents (regardless of whether those documents are policy statements, Director's Orders, guidelines, manuals, memoranda, etc.). The key words are: *should, may, must*, and *will*. These words are unambiguous; they can mean only one thing. When we see the words must or will (or must not, will not) used in any guidance document there is no reason to ask if it is mandatory or not—it **is** mandatory." *See* Exhibit 6, "Things to Know," #12.

72.     The Defendant had a duty to use ordinary care to keep the premises safe for use by its visitors.

73.     The National Park Service's Management Policies 2006 require that "the saving of human life *will* take precedence over all other management actions as the Park Service strives to protect human life and provide for injury free visits." *See* Exhibit 7, excerpt from National Park Service Management Policies 2006, § 8.2.5.1 (emphasis added).

74.     The National Park Service's Management Policies 2006 also require that the Park Service "*will* strive to identify and prevent injuries from recognizable threats to safety and health of persons" by applying codes, standards, engineering principles, and the guidance contained in Director's Orders and their associated reference materials. *Id.*

75.     "The National Park Service (NPS) and Bandelier have a legal responsibility to provide for visitor safety and this includes the systematic inspection, monitoring, and mitigation of potential hazard tree damage to people and property." *See* Exhibit 8, Bandelier National Monument Vegetation Management Plan, Appendix J, Hazard Tree Management Standard Operating Procedures.

76.     The Superintendent for Defendant was required to administer the Bandelier's Hazardous Tree Management Plan.

77.     "It is the responsibility of each superintendent, as appropriate, to develop and implement a hazardous tree management plan as an action plan." *See* Exhibit 3, VI.I; Exhibit 4, 3.1.

78.     "The superintendent *must* designate at least one staff person with the responsibility to perform or delegate the necessary inspections." Exhibit 3, VI.I (emphasis added).

79.     In August 2009, Bandelier Superintendent Lott created, devised, and generated Bandelier's Hazardous Tree Management Plan. *See* Exhibit 4.

80.     Upon information and belief, Superintendent Lott did not designate any Bandelier employee with the responsibility to perform or delegate the necessary inspections for hazardous tree management.

81.     Bandelier's Superintendent had a duty to assure fulfillment of the Hazard Tree Management Plan and properly train staff in hazard tree management. *See* Exhibit 3, VI.I.

82.     "He/she also *must* assure the adequacy of fulfillment of the plan and address the needs for changes or updating." *Id.* (emphasis added).

83.     On the day of the incident, no Bandelier employee had any hazardous tree training. *See* Exhibit 5, paragraph 5.

84.    On the day of the incident, Bandelier did not have a hazard tree trainer or a training curriculum for identifying hazardous trees. *See* Exhibit 5, paragraph 6.

85.    Under Bandelier's Hazardous Tree Management Plan, Defendant was required to inspect every one to two (1-2) years each Designated Hazardous Tree Management Zone, and to maintain a record of inspections and corrective actions taken. Exhibit 4, 3.7 (Program Requirements).

86.    Bandelier's Hazardous Tree Management Plan lists the Designated Hazardous Tree Management Zones, which includes the parking lot at the Amphitheater. Exhibit 4, p. 21.

87.    The lightning-struck tree that fell on Plaintiffs on October 3, 2016 in the Amphitheater parking lot was located in a Designated Hazardous Tree Management Zone.

88.    Defendant was required to inspect the lightning-struck tree for abatement or mitigation. Exhibit 4, 3.8.

89.    Defendant was required to abate the risk of exposure to hazardous tree conditions or directly mitigate through physical removal or pruning of the defect to achieve park visitor protection and hazard reduction objectives. *Id*.

90.    Defendant does not have any documents evidencing inspection of the lightning-struck tree prior to its failure. *See* Exhibit 5.

91.    The only documentation evidencing inspection of the lightning-struck tree took place after the tree failed. *Id*.

92.    After September 22, 2016, and before the tree's failure on October 3, 2016, at least six Bandelier employees observed the tree in person and/or had knowledge of it having been struck by lightning, and Superintendent Lott was aware of the existence of the lightning-struck tree.

93.     Defendant knew about the lightning-struck tree and did not take any action to abate the risk of exposure to hazardous tree conditions or directly mitigate through physical removal or pruning of the defect.

94.     Defendant had a duty to warn the public about the risk of exposure to the lightning-struck tree.

95.     In the event that the inspection of the hazardous tree condition could not be completed because of insufficient work force, inadequate funding, or some other management constraint, Defendant was required to ensure public notification about the risk of exposure to known hazardous conditions. *See* Exhibit 4, 3.9.

96.     Defendant was required to provide reasonable public notice that a known highly hazardous tree problem would not be alleviated in a timely fashion. *Id*., 3.2.2.

97.     "Where trees having the highest hazard ratings are potentially involved, prompt closure of such areas to public entry *must* be undertaken." *Id*., 3.9.

98.     Defendant was required to abate the risk of exposure to hazardous tree conditions or directly mitigate through physical removal or pruning of the defect, close the site, and/or warn the public of the serious risk of injury, death or property damage.

99.     Defendant knew about the lightning-struck tree before the incident on October 3, 2016, but did not take any action to warn the public of the serious risk or injury, death or property damage.

100.     The large, lightning-struck ponderosa pine located adjacent to a trail and the Amphitheatre parking lot, within the Designated Hazardous Tree Management Zones, was known by Defendant to create, and it clearly did create, an obvious risk of serious injury, death and/or property damage.

101.    It was foreseeable that failing to assess and remove the lightning-struck ponderosa pine from a high traffic area would involve an unreasonable risk of injury and/or death to the public.

102.    Defendant had a duty to assess and remove the lightning-struck ponderosa pine to prevent injury to the public and Plaintiffs.

103.    Defendant failed to exercise ordinary care in its duty.

104.    Defendant, by and through its agents, employees, and/or representatives, breached its duty to Plaintiffs in the following manners:

a.      By failing to use ordinary care to keep the premises safe for use by visitors;

b.      By failing to identify and prevent injuries from recognizable threats to the health and safety of persons visiting Bandelier;

c.      By failing to administer and adequately fulfill the Bandelier's Hazardous Tree Management Plan;

d.      By failing to comply with the Bandelier's Hazardous Tree Management Plan and the United States Department of the Interior National Park Service policies;

e.      By failing to designate at least one staff person with the responsibility to perform or delegate the necessary hazardous tree inspections;

f.      By failing to properly train its staff in hazard tree management;

g.      By failing to provide adequate guidance, assistance, training, and supervision relating to the identification and remediation of hazardous trees;

h.      By failing to retain or assign qualified personnel to provide adequate regional guidance, technical assistance, training, supervision, and qualified personnel to carry out duties of inspecting, identifying and remediating known or obvious tree hazards at or near park-designated developed zones and/or Designated Hazardous Tree Management Zones;

i.      By failing to conduct appropriate inspections and to document such inspections of the subject Amphitheater parking lot identified hereinabove to identify hazardous trees;

j.      By failing to abate the risk of exposure to hazardous tree conditions or directly mitigate through physical removal or pruning of the defect;

k.      By failing to take reasonable action to remove or remediate the known or obvious risk of serious injury, death or property damage to persons using the Amphitheater parking lot and nearby trail;

l.      By failing to warn potential users of the site of the serious risk of harm, death and/or property damage caused by the lightning-struck tree;

m.      By failing to provide precautionary measures for the hazardous and unsafe conditions;

n.      By failing to promptly close the area to public entry where a tree having the highest hazard rating was involved; and

o.      By failing to provide reasonable public notice that a known highly hazardous tree problem would not be alleviated in a timely fashion.

105.    The decisions and actions alleged hereinabove were matters of mandatory compliance and did not involve a conscious choice, susceptible to policy judgment or involve an exercise of political, social or economic judgment.

106.    Bandelier's Wildland Fire Division personnel removed, cut, and chipped the lightning-struck tree on the day that it fell and struck Plaintiffs. Defendant had control of the tree and precautionary measures through early removal of the tree prior to the incident were feasible.

107.     As a direct and proximate result of Defendant's negligence, the Estate of Beverly Modlin sustained wrongful death damages including, but not limited to, pain and suffering, the value of her life, and the aggravating circumstances attending the wrongful act or neglect.

108.     As a further direct and proximate result of Defendant's negligence, the Estate of Beverly Modlin also incurred the reasonable expenses of the funeral and burial.

109.     As a further direct and proximate result of Defendant's negligence, Plaintiff Robert Modlin suffered severe physical injuries; reasonable and necessary medical expenses; pain and suffering; emotional distress in witnessing the traumatic death of his mother, Beverly Modlin; loss of enjoyment of life; and the nature, extent, and duration of his injuries.

110.     As a further direct and proximate result of Defendant's negligence, Plaintiff Susan Hines experienced personal injuries including pain and suffering, the nature, extent, and duration of the injuries, as well as emotional distress in witnessing the traumatic death of her mother, Beverly Modlin.

## COUNT THREE

### Negligent Infliction of Emotional Distress

111.     Plaintiffs incorporate by reference all the allegations contained above as though fully set forth at length herein.

112.     Plaintiffs Robert Modlin and Susan Hines are the son and daughter, respectively, of the decedent Beverly Modlin.  Robert and Susan had a close family relationship with their mother.

113.     As a result of seeing their mother, Beverly, killed by a seventy (70) foot tall and six (6) foot circumference ponderosa pine, Robert and Susan suffered severe emotional distress.

114.     The emotional distress suffered by Plaintiffs was of such an intensity and duration that no ordinary person would be expected to tolerate it.

115.    Robert and Susan were bystanders who suffered severe emotional distress as a result of witnessing a sudden, traumatic event that caused the death of their mother, Beverly.

116.    Plaintiffs Robert and Susan should be compensated for suffering from the severe emotional shock of witnessing their mother, Beverly Modlin, being killed by a seventy (70) foot tall and six (6) feet in circumference ponderosa pine.

## COUNT FOUR

### Spoliation of Evidence

117.    Plaintiffs incorporate by reference all the allegations contained above as though fully set forth at length herein.

118.    On October 3, 2016, just a few hours after the lightning-struck tree fell and killed Beverly and injured Robert and Susan in the Amphitheater parking lot at Bandelier, Defendant destroyed the tree by cutting it, chipping it, and removing the fallen tree from the area.

119.    Defendant knew, or should have known, that there was the potential for a lawsuit when it destroyed and disposed of the tree.

120.    Defendant disposed of, destroyed, mutilated or significantly altered potential evidence.

121.    By its conduct, Defendant's sole intent was to disrupt or defeat a potential lawsuit.

122.    The destruction and disposal of the lightning-struck tree happened without a reasonable explanation, leading to the conclusion that the destroyed tree would be unfavorable to Defendant.

123.    The destruction or alteration of the lightning-struck tree could result in Plaintiffs' inability to prove their case;

124.   Plaintiffs suffered damages as a result of the destruction or alteration of the lightning struck tree that failed.

## **DAMAGES**

125.   Plaintiffs reallege and incorporate by reference all statements and allegations set forth above.

126.   As a direct and proximate result of the negligent or wrongful acts and/or omissions of Defendant set forth above, Plaintiffs incurred and seek the following general and special damages, including damages for wrongful death, all in excess of the jurisdictional limit of this Court:

(a)  Pain and suffering, past and future;

(b)  Emotional distress, past and future;

(c)  Reasonable and necessary medical treatment and services;

(d)  Funeral and burial expenses;

(e)  Loss of enjoyment of life;

(f)  The nature, extent, and duration of Plaintiffs' injuries;

(g)  The value of Beverly's life;

(h)  The aggravating circumstances attending the wrongful acts and neglect of Defendant;

(i)  And all other damages the Court deems just and proper.

WHEREFORE, Plaintiffs pray for and demand an award to be fixed by the Court in a reasonable amount. Plaintiffs ask for all damages that are fair and just, in an amount supported by the allegations in this Complaint and the evidence adduced at trial. Additionally, Plaintiffs ask for

the costs of this action, reasonable attorney's fees, and post-judgment interest as provided by law,

and for all such other relief to which they are legally entitled and as this Court deems appropriate.

Respectfully submitted,

*/s/ Jacob G. Vigil*
Jacob G. Vigil, Esq.
VIGIL LAW FIRM, P.A.
2014 Central Ave, SW
Albuquerque, NM 87104
(505) 243-1706
jake@zlaws.com
*Attorney for Plaintiffs*

Z:\CLIENTS\Modlin, EO Beverly\Pleadings\Complaint\2019.08.06
Complaint V3.Docx